Harry M. Solomon v. Commissioner.
Solomon v. Commissioner
Docket No. 27136.
United States Tax Court
1952 Tax Ct. Memo LEXIS 111; 11 T.C.M. (CCH) 866; T.C.M. (RIA) 52253; August 15, 1952
*111 Richard E. Thigpen, Esq., 1903 Liberty Life Bldg., Charlotte, N. C., for the petitioner. Paul E. Waring, Esq., for the respondent. LEMIRE Memorandum Findings of Fact and Opinion LEMIRE, Judge: This proceeding is for a redetermination of deficiencies in income tax for the years 1945 and 1946 in the respective amounts of $10,220.69 and $7,172.79. The issues are (1) whether the respondent properly determined that 57.5 per cent of the distributable net income of the partnership conducted under the name of S. & B. Solomon for the calendar year 1945 and the fiscal period ended June 30, 1946, is taxable to the petitioner, and (2) whether 50 per cent of the net income of a mercantile business operated under the name of "The Beach Shop" for the calendar years 1945 and 1946 is taxable to the petitioner. A further issue, as to the amount deductible as medical expenses paid in the taxable year 1946, is to be resolved under Rule 50. Findings of Fact The petitioner is an individual residing at Wilmington, North Carolina. His tax returns for the periods involved were filed with the collector of internal revenue for the district of North Carolina. The petitioner is the *112 husband of Louise F. Solomon. They are the parents of three daughters: Marie, Jean and Katherine Solomon, born in the respective years 1925, 1926 and 1931. During the year 1932 S. & B. Solomon Company, Inc., was formed for the purpose of engaging in the wholesale dry goods business in Wilmington, North Carolina The capital stock in 1942 consisted of 800 shares of which 50 shares were held by the petitioner, one share by his mother, Ida Solomon, and 349 shares were held by the estate of his father, Sigmund Solomon, 399 shares were held by petitioner's uncle, Bernhard Solomon, and one share by his aunt, Amelia Solomon. In 1942 the principal employees of S. & B. Solomon Company were the petitioner, J. L. Solomon, A. O. Solomon, Arthur A. Lewis and R. H. Gieschen. In the early part of 1942 the Bernhard Solomon family, which owned a half interest in the aforementioned corporation, desired to liquidate their interest due to the advanced age and inactivity of Bernhard Solomon. After some discussion the principal employees agreed to form a partnership to purchase the assets of the corporation. On June 1, 1942, the petitioner addressed a letter to the board of directors offering, on behalf *113 of a partnership in the process of formation, to purchase the assets of such corporation on the terms set forth in the letter. On June 15, 1942, the board of directors adopted a resolution accepting the proposal of purchase, and directing that a meeting of the stockholders be held on June 15, 1942, for the purpose of passing on the proposal. On the same date a meeting of the stockholders was held. The minutes of the stockholders' meeting contain, inter alia, the following preambles and resolution which were unanimously adopted: "WHEREAS, a proposal has been made by S & B Solomon, a partnership, consisting of H. M. Solomon, Louise F. Solomon, Marie Solomon, Jean Solomon, Katherine Solomon, Rudolph Gieschen, J. L. Solomon, Adolph O. Solomon, and Arthur A. Lewis, for the purchase of all of the assets of the corporation, for the purchase price of $90,000.00, less the capital stock, accrued income and excess profit taxes payable $8,000.00 January 1, 1943, and the balance to be payable in ten equal yearly installments, the first of which payments or installments shall be due and payable on January 1, 1944; the remaining payments and installments to become due and payable on the 1st *114 day of January of each succeeding year thereafter until the obligation is paid in full; that said deferred payments or installments to bear interest at the rate of 3% per annum, payable semi-annually, and * * *
"Whereas, the stockholders of this company are of the opinion that the offer is a fair and reasonable one and should be accepted, "NOW, THEREFORE, BE IT RESOLVED that the said proposal be and the same is hereby accepted by this company on the terms set forth in the proposition as hereinbefore set out, and the officers of the company are hereby empowered and directed to prepare and execute all instruments, and to take all necessary steps to put such acceptance into effect, and to receive on behalf of this company the sum of $8,000.00, payable in cash, on January 1, 1943, and the balance in notes of the proposed partnership, in accordance with the terms of said written proposal, and to hold the said cash and notes as assets of this corporation. "It being understood that the said corporation shall be kept in full legal force and effect." On June 20, 1942, an agreement was executed by H. M. Solomon, Louise F. Solomon, Rudolph Gieschen, J. L. Solomon, Adolph O. Solomon, *115 Arthur A. Lewis, and H. M. Solomon as agent for Marie, Jean and Katherine Solomon, which contains, inter alia, the following provisions: "THAT the said parties agree to become partners under the firm name and style S & B Solomon, and to engage under said name in the general Wholesale drygoods and notions business in the City of Wilmington, County of New Hanover and State of North Carolina, and elsewhere throughout the several states of the United States, and pursuant thereto agree as follows: "1. That the interests of the said partners in the partnership aforesaid shall be as follows and none other: NAME
PERCENTAGE
H. M. Solomon
27 1/2%
Louise F. Solomon
25%
Marie Solomon
10%
Jean Solomon
10%
Katherine Solomon
10%
Rudolph Gieschen
5%
Adolph O. Solomon
5%
Arthur A. Lewis
5%
J. L. Solomon
2 1/2%
"That the amount of cash contributed to said partnership in payment of the above interests is set out in the books of the said partnership as of July 1, 1942. * * *
"3. That the capital requisite for carrying on the said business has been advanced by the said parties hereto as set out in paragraph One hereof. "4. That the interest of the said *116 partners shall be in the percentage above specified and in the event that any of said partners desire to withdraw from said firm, then he shall offer his interest therein to the remaining partners at a price according to the book value as the same appears on the books and records of said partnership following an audit made by a competent Certified Public Accountant. "5. It is agreed that the said partnership shall run for a period of twenty years from July 1, 1942, unless sooner terminated. "6. It is further agreed that the said H. M. Solomon as general manager shall receive a salary of $6,000.00 a year, payable at the rate of $500.00 a month, and that the other partners to said agreement shall receive the same salary and compensation which they were receiving and being paid as of June 3, 1942, according to the books of S & B Solomon Company, a corporation, by whom they were then employed, and that future increase or reduction in said salaries shall be based upon the respective duties which each partner bears as an employee in said partnership. "7. After paying all necessary and proper operating expenses, including the salaries of the several partners, according to generally *117 accepted business practices, the profit from the said business shall, after the payment of the debts and obligations of the said partnership, be divided among the partners upon the percentages above set out and in the event the said business or partnership shall suffer a loss for the said period of time, then the said loss shall be likewise so computed. The balance sheet of the partnership of S. & B. Solomon as of July 1, 1942, shows the following liabilities and capital investment of partners: Notes payable, Peoples Savings Bank &
Trust Company
$35,000
Notes payable, S. & B. Solomon Com-
pany, Inc.
90,000
Capital investment - Partners
8,000
On July 1, 1942, the partnership of S. & B. Solomon assumed the indebtedness of $35,000 to the Peoples Savings Bank & Trust Company, which indebtedness is evidenced by a note of the partnership, signed by Harry M. Solomon, partner. On July 1, 1942, the S. & B. Solomon partnership executed a note in the face amount of $90,000 payable to the S. & B. Solomon Company, Inc. This note is endorsed by all the individuals named in the partnership agreement, except the three minor children of the petitioner. On December 24, 1942, the *118 petitioner as grantor executed a "Trust Agreement" with the Peoples Savings Bank & Trust Company, as trustee, for the benefit of his three minor daughters. The pertinent provisions of the trust agreement read as follows: "PROPERTY INTRUSTED The Grantor has this day paid over to the said Trustee the sum of $2,400.00 in cash, the receipt whereof is hereby acknowledged, which sum is to be forthwith paid by the Trustee to S & B Solomon, a partnership located in the City of Wilmington, County of New Hanover, North Carolina, and is in payment of the partnership interest which the beneficiaries hereunder have in and to the general partnership of S & B Solomon, which interest is as follows: Marie Solomon, a minor
10%
Jean Solomon, a minor
10%
Katherin Solomon, a minor
10%
"The above interest in said partnership with any other properties of any and every kind and description which may be hereinafter brought within the operation of this trust agreement are to be held by the Trustee or its successors in trust, for the purposes hereinafter set forth. "The Grantor, believing that the undivided 30% interest of the said beneficiaries herein in said partnership is now *119 and should continue to be a property worthy of retention as an investment in the trust estate hereby expressly authorizes and directs its retention for the period of ten (10) years from the date of the execution of this instrument, and if, after the expiration of ten years from said date the said Trustee shall deem it proper to liquidate the interests of the beneficiaries hereunder in said partnership, then the Trustee shall have the right and power without further authorization, to sell the said interests in said partnership to the remaining partners, according to the terms and provisions of the partnership agreement, dated July 1, 1942, except insofar as the same may thereafter have been amended by the parties thereto, and the payment to the Trustee of the sum for such partnership interests shall operate as a complete release and settlement of any and all interest, right or title which the beneficiaries shall have in said partnership. "In making said sale the Trustee may, in its judgment and discretion, accept cash or part cash and the balance in deferred payments, and the Trustee shall reinvest the same in such other property, real or personal, as it may consider necessary and *120 proper for the purposes of the trust, and shall pay to the beneficiaries hereunder the income derived therefrom in the manner hereinafter set out. "In the event that for any reason the remaining partners in said partnership agreement shall determine to liquidate the affairs of the said partnership before ten years from this date, then the Trustee herein shall receive the consideration representing the sale price or liquidating value, and shall invest the proceeds and distribute the income as hereinafter set out. "The Grantor expressly authori0es the Trustee to participate in any incorporation, dissolution of corporation, or organizing or dissolving of the said partnership that in the future might be deemed wise by the remaining partners in said partnership and any act of the said Trustee therein done in the accomplishment of the purposes set out in this paragraph shall be purely ministerial and the final decision for the dissolution or change in said partnership shall be made by the remaining partners in said partnership according to said partnership agreement and none other, and the Trustee shall not be held accountable for the question of the fairness or adequacy of the amount *121 paid for the interests of said benficiaries, but shall be bound by the terms of the said partnership agreement insofar as it represents the manner of sale and price thereof. AS TO PRINCIPAL "The trust herein created and established shall be administered for the benefit of the Grantor's minor daughters; Marie Solomon, Jean Solomon and Katherine Solomon, and their heirs as hereinafter provided. "When and as each beneficiary shall have attained the age of thirty years, the Trustee is directed to forthwith pay over and deliver to said child or children, as they reach thirty years of age, the entire principal interest of the said child in said trust, and her share of the accrued income not previously distributed, and upon the payment of the sum and delivery aforesaid, the said Trustee shall be released of the trust in reference to the interest of the said child, and the trust shall continue until the last of the three children shall have reached the age of thirty years. "In the event of the death of any of the said beneficiaries above named prior to the termination of her interest in said trust, then and in that event the interest of the said beneficiary of whatever kind, shall *122 vest and become absolute in her heirs, per stirpes, provided that no beneficiary of said deceased original beneficiary shall receive his or her share unless and until he or she shall have obtained the age of thirty years. "In the event of the death of any of the original beneficiaries herein named during the period of this trust, without leaving issue, then in that event this trust shall be administered for the use and benefit of the living sisters of the said original beneficiaries, who shall take the trust benefits equally. "All profits or income received by the Trustee from the partnership during the ten-year period shall be held by the Trustee, for the said beneficiaries and the only investment made therefrom shall be to loan said money to said partnership (save such amount as may be necessary to pay Trustee's commissions and all taxes) at the interest rates then prevailing, when so requested by the partnership, and the Trustee shall accept as security therefor the note or notes of said partnership, to run for a period not exceeding the unexpired portion of the ten years. "The above provision being a mandatory investment, the Trustee shall not be liable for any loss sustained *123 in making the same, and in the event the partnership shall not desire to borrow from said Trustee, then the Trustee shall not be chargeable for failure to invest said funds or for failure to pay or earn interest thereon but shall only be chargeable with the safe keeping thereof. "If the said partnership shall be dissolved by agreement between the partners according to the terms and provisions of the partnership agreement, dated July 1, 1942, then the trustee shall receive the interests of the said beneficiaries in said partnership, and the above limitation is removed, and the trustee shall make such investments in real and/or personal property, as it may determine necessary and proper for the purposes of said trust and after deducting from the income therefrom its commission, taxes, and all other proper and legal expenses, shall pay said income to the beneficiaries hereunder monthly or quarterly as it may determine proper. "It is the intent and purpose hereof that upon the liquidation of the beneficiaries' interests in said partnership the Trustee shall have full power and authority to manage and control the trust estate, investing and reinvesting the same in real and personal *124 property, as it may deem proper and suitable for the investment of trust funds, without the restrictions as to the type, kind and manner of investment limited by law. "The Trustee is granted full power to retain, sell, use, exchange, or otherwise dispose of any and all of the property in the trust as it may deem proper. It may borrow in the name of said beneficiaries, pledge its assets as security for such loans, and generally do and perform all things necessary and proper for the said purposes, subject to the limitation of investment for the ten-year period aforesaid. IRREVOCABLE " THE Grantor herein declares that this agreement and settlement made for the use and benefit of his three minor daughters, be and the same is irrevocable as far as he is concerned, and that he shall hereafter stand without power at any time to revoke, change or annual any of the provisions herein contained, except that he may hereinafter incorporate in the trust agreement, other real and personal propperty for the use and benefit of the beneficiaries herein set out. "PROVIDED FURTHER that it is understood and agreed that nothing herein contained shall in anywise effect the terms and provisions of *125 the partnership agreement dated July 1, 1942. "It is distinctly understood and agreed by all parties hereto that the said Trustee herein named shall not have the power or authority to enter into or to participate in the general operation and management of the partnership, other than to receive the income and profits due the said beneficiaries hereunder during the first ten years, and that after the expiration of said period the said Trustee shall have full power and authority to sell and dispose of the interest of the beneficiaries in the partnership unless the remaining parties desire to dissolve or liquidate the partnership before such time." On December 24, 1942, the petitioner drew his personal check to the order of the trustee in the amount of $2,400 and on December 29, 1942, the trustee drew its check to the order of the S. & B. Solomon partnership for the capital contribution of the three beneficiaries of the trust. The partnership books reflect a credit entry of $800 to the capital accounts of Marie, Jean and Katherine Solomon on December 31, 1942. On December 30, 1942, the petitioner drew his personal check for $5,600 to the order of the S. & B. Solomon partnership in *126 payment of his interest, the interest of his wife Louise F. Solomon, and the interest of the other four employee partners in such partnership. On March 13, 1947, an agreement was executed transferring the assets of the S. & B. Solomon partnership to a new corporation to be known as S. & B. Solomon, Inc., and dissolving the partnership as of June 30, 1946. The trustee of the trust for Marie, Jean and Katherine Solomon was to receive a proportionate interest in the new corporation evidenced by stock and debentures in exchange for the interest of the trust in the S. & B. Solomon partnership. During the period July 1, 1942, to June 30, 1946, the trustee for Marie, Jean and Katherine Solomon received distributions of income from the partnership aggregating $59,323.29 of which amount the sum of $19,774.43 was allocated to each of the three beneficiaries of the trust. During the same period the trustee did not make any distributions of trust income or capital to any of the beneficiaries of the trust, except for the payment of federal and North Carolina income taxes due each year. No distributions of trust income were made by the trustee to the three beneficiaries prior to January 7, 1948. Between *127 the latter date and January 3, 1952, the trustee distributed to each of the three beneficiaries the sum of $1,750. On December 19, 1944, the partnership of S. & B. Solomon borrowed from the trustee of the trust for the benefit of Marie, Jean and Katherine Solomon the sum of $15,000 on its note bearing three per cent interest. On the same date the partnership paid the balance of $25,000 on its $90,000 note to the S. & B. Solomon Company, Inc. The note of $15,000 was repaid to the trust in two installments of $7,500 on June 29 and August 29, 1945, respectively. On May 2, 1947, the petitioner borrowed from the trust for his three children the sum of $10,000 on his note bearing three per cent interest. This note was paid on December 16, 1947. On December 17, 1947, the petitioner borrowed from such trust the sum of $21,000 for which amount he gave his note. The proceeds of this loan were used by the petitioner as part payment of his income tax liability for prior years. On May 12, 1948, the said trust borrowed the sum of $10,000 from the Peoples Savings Bank & Trust Company on its secured note at two and one-half per cent, and on the same day the trust loaned to the petitioner the *128 sum of $10,000 on his demand note bearing three per cent interest. On July 1, 1948, the petitioner paid to such trust the sum of $1,500 on his note in the face amount of $21,000. On December 31, 1951, the petitioner was indebted to such trust in the amount of $29,500. Neither the trustee nor the three minor beneficiaries of such trust participated in any policy making or rendered any services to the S. & B. Solomon partnership. Capital was an income-producing factor of such partnership. In determining his deficiency the respondent taxed to the petitioner the partnership income which was distributable to the trust in the taxable periods in question. The trust created by the petitioner on December 24, 1942, or the beneficiaries thereof were not bona fide members of the partnership business conducted under the name of S. & B. Solomon during the taxable periods involved herein, and the bona fide members of the partnership did not in good faith and acting with a business purpose intend to join with the trust, the trustees or the beneficiaries of the trust as partners in the conduct of the partnership business. In about 1930 the petitioner and W. T. Brown owned and operated a store *129 handling bathing suits and beach wear in general at Carolina Beach, North Carolina, under the name of the "Beach Shop." The store was operated in a leased building under the management of Katherine Scott. During the fall of 1941 the building was destroyed by fire. In 1942 the petitioner and W. T. Brown purchased an adjacent lot and constructed a new building title to which was taken in the name of the partnership of Brown and Solomon. The "Beach Shop" then began operations in one part of the new building under the management of Mrs. E. V. Leonard. The partnership of Brown and Solomon was also engaged in the rental of properties at Carolina Beach. Mrs. Leonard collected some of the rentals for Brown and Solomon while managing the Beach Shop. In 1942 Louise F. Solomon lived at Carolina Beach during the summer and spent some time at the Beach Shop. Hattie S. Brown, wife of W. T. Brown, did not render any services in connection with the Beach Shop. Neither Louise F. Solomon nor Hattie S. Brown contributed any capital to the alleged partnership of Solomon and Brown. During the taxable years 1945 and 1946 about 99 per cent of the merchandise sold by the Beach Shop was obtained from the *130 partnership of S. & B. Solomon on orders of Mrs. E. V. Leonard who was then managing the store. The Beach Shop purchased $21,424.82 and $20,833.87 worth of merchandise in 1945 and 1946, respectively. The books and records of the business carried on under the name of the Beach Shop were kept by the petitioner. W. T. Brown and the petitioner went to Carolina Beach on alternate Saturdays to collect rents and the weekly receipts of the Beach Shop, which were brought to Wilmington, North Carolina, and deposited in an account known as Brown and Solomon in the Peoples Savings Bank & Trust Company, Wilmington, North Carolina. Louise F. Solomon and Hattie Brown were not authorized to withdraw funds from such account. During the years 1943 to 1946, inclusive, the petitioner and his wife, Louise F. Solomon, were living in Wilmington, North Carolina. During the taxable years involved Louise F. Solomon did not go to Carolina Beach except on alternate weekends when she accompanied her husband on his trips to collect the rents for Brown and Solomon and the receipts of the Beach Shop. During the taxable years in question no rent was paid to Brown and Solomon for the space occupied by the Beach *131 Shop. In the years 1945 and 1946 a partnership return was filed under the name of Solomon and Brown on which the gross income and the deductions of the business operated under the name of the Beach Shop were reported. Such returns disclose that the net income from such business was distributed equally to Louise F. Solomon and Hattie S. Brown. In her individual income tax returns for 1945 and 1946 Louise F. Solomon reported the amount of the distributive share shown on the partnership returns as allocated to her as her income. The record does not disclose whether or not Hattie S. Brown reported the other half of such distributive share as her income. The State of North Carolina imposed an annual license tax for the privilege of operating a mercantile business. A certificate was issued setting forth the names of the persons operating the business and the amount of tax paid. Such certificate was required to be posted in the place where the business was conducted. For the years 1949-1950 and 1950-1951, a license was granted to "Louise F. Solomon & Hattie S. Brown 'The Beach Shop' the privilege of conducting business in * * * property of Brown & Solomon Stores." The name of the person *132 or persons to whom the license was granted in the taxable years 1945 and 1946 was not shown. In determining his deficiency the respondent taxed to the petitioner one-half the net income of the business operated under the name of the Beach Shop for the taxable years 1945 and 1946. The petitioner has failed to establish that the net income realized in the years 1945 and 1946 from the operation of the Beach Shop was not income of the partnership of Brown and Solomon, 50 per cent of which is properly taxable to the petitioner in such taxable years. The petitioner paid medical expenses in the amount of $1,385.40 during the taxable year 1946. Opinion The first issue presents the question whether the trust created by the petitioner for the benefit of his three minor daughters was a bona fide member of the partnership business conducted in the years 1945 and 1946 under the name of S. & B. Solomon. The respondent has recognized a valid partnership composed of the petitioner, his wife Louise F. Solomon, and the other four former employees of the predecessor corporation as partners. He contends, however, that neither the trust, the trustee nor the beneficiaries intended in good faith *133 and acting with a business purpose to join together in the conduct of the business of such partnership. The respondent does not challenge the validity of the trust or the right of the trust to enter into a valid partnership agreement. The issue is narrowed to a factual determination, whether the facts and circumstances revealed by this record meet the test laid down in . The partnership agreement executed on June 20, 1942, includes the names of Marie, Jean and Katherine Solomon, the three minor daughters of the petitioner, as partners and fixed their capital interest at ten per cent each. The daughters did not execute the agreement, but their names were affixed by the petitioner "as agent." The daughters did not perform any services for such partnership and the record does not disclose that they were informed they had been made partners. On December 24, 1942, the petitioner, as grantor, executed a trust agreement with the Peoples Savings Bank & Trust Company, as trustee. The petitioner paid to the trustee the sum of $2,400 with a direction that the said sum be paid to the partnership of S. & B. Solomon to cover the capital contribution *134 of the three daughters. The trust instrument directs the trustee to retain as an investment the undivided 30 per cent interest of the three daughters in the partnership for ten years, a period coterminous with the time when the balance of the purchase price for the assets acquired by the partnership was to be paid. During said ten year period the trustee could make no distribution to the beneficiaries and the only investment which the trustee could make from the profits and income received from the partnership was to loan such funds to the partnership. Because of the mandatory investment requirement the trustee was relieved of any liability for loss sustained in making such investment and from liability for failure to earn interest in the event the partnership did not borrow from the trust. If the partnership was dissolved prior to the expiration of the ten-year period, these limitations on the powers of the trustee were removed. The trust was to continue until the youngest daughter of the petitioner reached the age of 30 years. As each daughter reached the age of 30 years the trustee was directed to pay over the principal and undistributed income to such beneficiary, if living, *135 and, if deceased, to her heirs, if any, upon their attaining 30 years of age, and if no issue then to her living sisters equally. On December 19, 1944, the partnership borrowed from the trustee the sum of $15,000 on its note bearing three per cent interest, and on the same date the partnership paid the balance of $25,000 to complete the payment due under the agreement of purchase. On March 13, 1947, the assets of the parnership were transferred to a corporation known as S. & B. Solomon, Inc., and the partnership was dissolved as of June 30, 1946. The trust, in exchange for its interest in the partnership, received a proportionate interest in the new corporation evidenced by stock and debentures. The trustee did not make any distributions of income to the beneficiaries of the trust until January 7, 1948. Between that date and January 3, 1952, the trustee distributed, in various amounts, a total of $1,750 to each beneficiary. Between May 2, 1947, and May 12, 1948, the petitioner, individually, borrowed the aggregate amount of $41,000 from the trustee of the trust created for the benefit of his three daughters. On December 16, 1947, he paid back to the trust $10,000 and on July 1, 1948, he *136 paid the sum of $1,500. On December 31, 1951, his indebtedness to such trust was $29,500. The partnership in question was a general and not a limited partnership. During the existence of such partnership the trustee of the trust did not take any active interest in the operation of the partnership or discuss with the other general partners any matters of policy. The trustee did not execute any partnership agreement or endorse, as did the other general partners, the $90,000 note given in payment of the assets acquired from the corporation. After careful consideration of all the facts and circumstances, the partnership agreement and the conduct of the parties in respect thereto, the trusts, the provisions thereof, as well as the testimony of the witnesses, and the control over the partnership income, we are of the opinion that the bona fide members of the partnership, conducted under the name of S. & B. Solomon, did not in good faith and acting for a business purpose intend to join with the trust, the trustee or the beneficiaries of the trust in the conduct of a partnership enterprise. We, therefore, sustain the action of the respondent in taxing to the petitioner in the taxable *137 years involved the 30 per cent of the net income of the S. & B. Solomon partnership distributed to the trust created by the petitioner. The second issue presents the question whether the petitioner is taxable on 50 per cent of the net income of a mercantile business operated under the name of the "Beach Shop" in the taxable years 1945 and 1946. The petitioner contends that the Beach Shop was owned and operated in the taxable years involved by the partnership of Solomon and Brown in which Louise F. Solomon, wife of the petitioner, and Hattie S. Brown, the wife of W. T. Brown, were equal partners. The respondent contends that the Beach Shop was owned and operated in the taxable years involved by the partnership of Brown and Solomon, composed of the petitioner and W. T. Brown, as equal partners. The record establishes that the partnership of Brown and Solomon prior to 1941 dealt in real property at Carolina Beach, Wilmington, and also operated during the summer months a mercantile shop under the name of the Beach Shop. The shop was under the management of an employee of the partnership of Brown and Solomon. In 1941 the building was destroyed by fire. The partnership of Brown and *138 Solomon purchased an adjoining lot and erected a building thereon. The Beach Shop was re-established in part of the new building and the remainder was occupied by another tenant. It is the contention of the petitioner that when the Beach Shop was reopened in 1942 it was under the ownership of a partnership composed of Louise F. Solomon and Hattie S. Brown. The only documentary evidence of the existence of the Solomon and Brown partnership prior to or during the taxable years 1945 and 1946 is the filing of partnership returns under the name of Solomon and Brown, reporting the gross income and deductions claimed with respect to the Beach Shop and showing the amount of net income distributable equally to Louise F. Solomon and Hattie S. Brown. The separate income tax returns of Louise F. Solomon for the taxable years, which were offered in evidence, disclose that she reported one-half of the net income of the Beach Shop shown on such partnership return distributable to her. No written partnership agreement was executed establishing the Solomon and Brown partnership. Louise F. Solomon testified that neither she nor Hattie S. Brown had contributed any capital and that the latter had rendered *139 no services at the store. She further testified that in 1942 she lived at Carolina Beach and spent considerable time at the store, but in the taxable years 1945 and 1946 only visited the store on alternate Saturdays with her husband, the petitioner, when he went to collect the rents and the store receipts. The partnership of Brown and Solomon collected no rent for the space occupied by the Beach Shop in the taxable years involved. The petitioner testified that he kept the books and records of the Beach Shop, and that 99 per cent of the merchandise sold was ordered by the employee manager of the store, which was furnished by the S. & B. Solomon partnership on credit. He also testified that he and W. T. Brown went to Carolina Beach on alternate Saturdays to collect the rents from their properties and the receipts of the Beach Shop; that these funds were commingled and deposited in the partnership bank account in Wilmington, North Carolina, of Brown and Solomon on which account neither Louise F. Solomon nor Hattie S. Brown had authority to withdraw funds. The laws of North Carolina require persons operating a mercantile business to pay license taxes and to post in the place of business *140 a certificate showing the persons operating the business and paying the tax. The petitioner offered in evidence certificates for the years 1949 and 1950 showing that the Beach Shop in those years was operated by Louise F. Solomon and Hattie S. Brown. Although the law was in effect in the taxable years 1945 and 1946, the petitioner did not offer in evidence similar certificates with respect to either of those years. The record establishes that the Beach Shop at one time was owned and operated by the partnership of Brown and Solomon and such evidence would have fixed the time when the alleged change of ownership and operation occurred. On the confused state of this record we are of the opinion that the petitioner has not carried the burden of showing that the income of the Beach Shop in the taxable years in question was not the income of the partnership of Brown and Solomon. For failure of proof we sustain the respondent's determination that one-half the net income from the operation of the Beach Shop was taxable to the petitioner in the years 1945 and 1946. The amount of the deduction, if any, to which the petitioner is entitled, as representing medical expenses paid in the taxable *141 year 1946, will be determined in the recomputation under Rule 50. Decision will be entered under Rule 50.